IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**UNITED STATES OF AMERICA**

**V.**                                                  **4:19-CR-00420-02-BRW**

**GLORIA CARDONA (01)**
**ARCELIA ROBLES (02)**

## ORDER

Pending is Defendant's Motion to Suppress (Doc. No. 70).  The Prosecution has

responded.[1]  On Tuesday, July 28, 2020, a hearing was held regarding the motion.  Initially, I

asked the parties to brief some issues.  However, after doing a little researching and reviewing

the video again, I feel fully advised in the premises.  For the reasons set out below, the motion is

DENIED.  Defendants may file a motion for reconsideration if they feel I have overlooked one

of their arguments.

## I.    BACKGROUND

On June 20, 2019, just before 10:00 p.m., Defendants were eastbound on Interstate 40 in

a rented pickup truck when they passed Trooper Paul Meeks, who was patrolling the area.

Trooper Meeks testified that he followed Defendants after noticing that the driver had both hands

on the wheel and was gripping it tightly.  According to Trooper Meeks, he pulled over the truck

because it crossed the fog line a few times. Ms. Arcelia Robles was driving and Ms. Gloria

Cardona, who rented the truck, was a passenger.  Trooper Meeks asked for license, registration,

and the rental agreement.  He chatted with both occupants of the truck about their trip and

received conflicting stories.  Eventually, he separately asked Ms. Cardona and Ms. Robles if he

---

[1]Doc. No. 73.

could search the vehicle, because he was suspicious of a box covered by a blanket in the back. Ms. Robles said yes.  Ms. Cardona intially said no, but later said yes.  A large quantity of suspected methamphetamine was found in the box and both ladies were arrested.

In their motion, Defendants asserted that the evidence must be suppressed because Trooper Meeks lacked probable cause to initiated the traffic stop and he did not have a reasonable suspicion to continue the detention.  At the hearing, Defendants argued two more points: (1) Trooper Meeks's testimony that he could see Ms. Robles had a tight grip on the steering wheel was not credible; and (2) Ms. Cardona's initial "no" should have ended Trooper Meeks's request to search the vehicle.

## II.     DISCUSSION

### A.     Reasonable Suspicion

While I agree with Defendants that Trooper Meeks could not tell how tight Ms. Cardona was gripping the steering wheel, it is irrelevant.  Trooper Meeks decided to follow the vehicle and he witnessed a traffic violation – crossing the fog line.  The undisputed evidence is that a traffic violation occurred.  Accordingly, Trooper Meeks had a legitimate reason to conduct a traffic stop.[2]

### B.     Extending the Stop

Defendants also contends that the stop went longer than its intended purpose and there was no reasonable suspicion to justify the continuation of the stop.  However, the Court of Appeals for the Eighth Circuit has "found a combination of nervous behavior and suspicious

_____

[2]*Whren v. U.S.*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

travel plans creates a reasonable suspicion justifying a traffic stop's extension."[3]  During the stop, Trooper Meeks asked routine traffic-stop questions.  While running a check on Ms. Robles's driver's license and registration, Trooper Meeks separated the ladies – one was in his patrol car and the other stayed in the truck, until she got out to talk to Trooper Meeks.  Both Defendants told Trooper Meeks an improbable story about driving from Arizona to Arkansas.  First, when he asked whether they were heading, both said "Arkansas," but they were already in Arkansas.  Eventually, both said Jonesboro, but neither lady knew where they were staying in Jonesboro.  Additionally, their stories were inconsistent.  Initially Ms. Robles said that Ms. Cardona's sister was sick and they were "staying for a week."  When Trooper Meeks mentioned that the rented truck had to be returned in two days, Ms. Robles changed her story and said she was just dropping off Ms. Cardona and heading straight back to Arizona, a thousand miles west.  When Trooper Meeks talked to Ms. Cardona, she said they were staying just "a day or two."

Trooper Meeks asked Ms. Robles about a covered box in the back of the vehicle, and Ms. Robles gave improbable explanation that it was from "this guy" and was to be delivered to another man, who she only knew by his first name.  Based on the totality of the circumstances, Trooper Meeks was justified in extending the scope of the stop.[4]

### C.    Consent to Search

When he asked if he could look in the covered box, Ms. Robles said "you can look." However, because Ms. Cardona was listed as the renter of the truck, he also asked her if he could search.  When Trooper Meeks asked Ms. Cardona about searching the truck, the following exchange took place:

---

[3]*United States v. Davis*, 943 F.3d 1129, 1133 (8th Cir. 2019)

[4]*Id.* at 1132 ("We evaluate whether police had reasonable suspicion to extend a traffic stop based on the totality of the circumstances.").

| | |
|---|---|
| Trooper Meeks: | Okay. I'm just asking. Do you have anything illegal in the car? |
| Ms. Cardona: | Oh, no. |
| Trooper Meeks: | No drugs or anything? |
| Ms. Cardona: | Oh, no. |
| Trooper Meeks: | Okay. |
| Ms. Cardona: | Just my medication. |
| Trooper Meeks: | Okay. Is it okay? |
| Ms. Cardona: | Do you want me to show you my medication. |
| Trooper Meeks: | Is it okay for me to search your truck? I want to make sure there's nothing because in there at all. Is that okay? |
| Ms. Cardona: | No. |
| Trooper Meeks: | It's not okay? |
| Ms. Cardona: | [Inaudible] |
| Trooper Meeks: | You don't have no drugs in there? |
| Ms. Cardona: | No. Just my medication. |
| Trooper Meeks: | Okay. Can I search your truck to make sure there's nothing bad in there. |
| Ms. Cardona: | No. There's no -- drugs in there. |
| Trooper Meeks: | Is it okay if I search your truck.  It's yes or no, miss. You rented the car so I have to ask you. |
| Ms. Cardona: | [Laughs] I mean, I rented car, yes. But she's my driver. |
| Trooper Meeks: | Yes, yes. But you are the renter of the car, so I have to ask you for permission to search the vehicle and make sure there's no drugs or anything like that in there. Is it okay with you if I search this truck for drugs, weapons, anything like that? |
| Ms. Cardona: | The only thing I have is my . . . |
| Trooper Meeks: | Is it okay if I search your truck? |
| Ms. Cardona: | [Inaudible] |
| Trooper Meeks: | Okay. You can turn around and face me. That's fine. Is it okay if I search this truck? |
| Ms. Cardona: | Yes. |
| Trooper Meeks: | Huh? |
| Ms. Cardona: | Yes. |
| Trooper Meeks: | You don't care. Hang out right here. Okay. Just step off right over here in the grass. |

While Trooper Meeks was certainly persistent, he was not getting a clear and

direct answer to his question.  Ms. Cardona did initially say no, but when Trooper Meeks

tried to clarify with "It's not okay?", Ms. Cardona started rambling about her medication.

Based on a review of the video, Ms. Cardona's eventual consent was clear and voluntary.

There was no coercion based on a review of the video and the totality of the

circumstance.  Furthermore, Ms. Cardona's initial "no" did not prevent Trooper Meeks

from getting clarification.  After Trooper Meeks got Ms. Cardona to focus on his question regarding the search, and not her medications, she consented to the search. She neither limited nor revoked her consent.  Additionally, there was enough communication between both Defendants and Trooper Meeks to determine that they knew what they were being asked, and knowingly consented to the search.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED this 30th day of July, 2020.


Billy Roy Wilson_____
UNITED STATES DISTRICT JUDGE