**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**UNITED STATES OF AMERICA**

**V.**  4:19-CR-00420-02-BRW

**GLORIA CARDONA (01)**
**ARCELIA ROBLES (02)**

**ORDER**

For the reasons set out below, Defendants' Motion for Reconsideration (Doc. No. 85) is DENIED.

**I.   BACKGROUND**

On June 20, 2019, just before 10:00 p.m., Defendants were eastbound on Interstate 40 in a rented pickup truck when they passed Trooper Paul Meeks, who was patrolling the area. Trooper Meeks testified that he followed Defendants after noticing that the driver had both hands on the wheel and was gripping it tightly. According to Trooper Meeks, he pulled over the truck because it crossed the fog line a few times. Ms. Arcelia Robles was driving and Ms. Gloria Cardona, who rented the truck, was a passenger. Trooper Meeks asked for license, registration, and the rental agreement. He chatted with both occupants of the truck about their trip and received conflicting stories. Eventually, he separately asked Ms. Cardona and Ms. Robles if he could search the vehicle, because he was suspicious of a box covered by a blanket in the back. Ms. Robles said yes. Ms. Cardona intially said no, but later said yes. A large quantity of suspected methamphetamine was found in the box and both ladies were arrested.

1

In their motion for reconsideration, Defendants asserted that the evidence must be suppressed because crossing the fog line is not a violation of Arkansas law and the consent to search was not voluntary.[1]

## II.  DISCUSSION

### A.  Reasonable Suspicion

Defendants there was no traffic violation under Arkansas Code Annotated § 27-51-302 that would warrant Trooper Meeks stopping their vehicle.  According to the statute, "A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that movement can be made with safety . . . ."[2]  Defendants focus on the last half of the sentence and argue that "[t]he Government has no evidence that Trooper Meeks made the necessary determination that Ms. Robles, the driver, did not ascertain that movement could be made safely."[3]  While this may be true, the argument ignores the fact that Defendant was not driving the vehicle "as nearly as practical entirely within a single lane."  The undisputed evidence is that the vehicle crossed the fog line.  Accordingly, Trooper Meeks had grounds to believe a traffic violation had occurred.[4]  Additionally, even if

---

[1]Doc. No. 85.

[2]Ark. Code. Ann. § 27-51-302.

[3]Doc. No. 85.

[4]*United States v. Barberena–Jimenez*, 77 F.3d 486 (8th Cir. 1996) (defendant crossed the fog line several times and the court found, "The evidence indicates that Barberena did not maintain his automobile in a single lane of traffic. This constitutes an offense in Arkansas."); *United States v. Pulliam*, 265 F.3d 736, 739 (8th Cir. 2001) ("Pulliam does not dispute that he moved out of his lane and does not claim that he needed to move out of his lane to avoid something in the road. Pulliam is right to argue that penal statutes should be strictly construed, but even under a strict construction, Byrd had him dead to rights for a traffic violation.").

crossing the fog line did not constitute a traffic violation, a mistake regarding an infraction can be excused if an objectively reasonable office believed a violation had occurred.[5]

### B.     Consent to Search

Defendants also assert that there was no consent when "a male state trooper asks a female for permission to search a vehicle is told 'no', proceeds to ask four additional times for permission on the side of a road at night and is eventually told 'yes.'"[6] Under the facts in this case, Defendants' argument is without merit.

When Trooper Meeks asked if he could look in the covered box, Ms. Robles said "you can look." However, because Ms. Cardona was listed as the renter of the truck, he also asked her if he could search. When Trooper Meeks asked Ms. Cardona about searching the truck, the following exchange took place:

| | |
|---|---|
| Trooper Meeks: | Okay. I'm just asking. Do you have anything illegal in the car? |
| Ms. Cardona: | Oh, no. |
| Trooper Meeks: | No drugs or anything? |
| Ms. Cardona: | Oh, no. |
| Trooper Meeks: | Okay. |
| Ms. Cardona: | Just my medication. |
| Trooper Meeks: | Okay. Is it okay? |
| Ms. Cardona: | Do you want me to show you my medication. |
| Trooper Meeks: | Is it okay for me to search your truck? I want to make sure there's nothing because in there at all. Is that okay? |
| Ms. Cardona: | No. |
| Trooper Meeks: | It's not okay? |
| Ms. Cardona: | [Inaudible] |
| Trooper Meeks: | You don't have no drugs in there? |
| Ms. Cardona: | No. Just my medication. |

---

[5]*United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) (noting that the determinative question is not whether the driver actually committed a traffic violation but whether an objectively reasonable officer could have formed a reasonable suspicion that the driver committed a traffic violation).

[6]Doc. No. 85.

| | |
|---|---|
| Trooper Meeks: | Okay. Can I search your truck to make sure there's nothing bad in there. |
| Ms. Cardona: | No. There's no -- drugs in there. |
| Trooper Meeks: | Is it okay if I search your truck. It's yes or no, miss. You rented the car so I have to ask you. |
| Ms. Cardona: | [Laughs] I mean, I rented car, yes. But she's my driver. |
| Trooper Meeks: | Yes, yes. But you are the renter of the car, so I have to ask you for permission to search the vehicle and make sure there's no drugs or anything like that in there. Is it okay with you if I search this truck for drugs, weapons, anything like that? |
| Ms. Cardona: | The only thing I have is my . . . |
| Trooper Meeks: | Is it okay if I search your truck? |
| Ms. Cardona: | [Inaudible] |
| Trooper Meeks: | Okay. You can turn around and face me. That's fine. Is it okay if I search this truck? |
| Ms. Cardona: | Yes. |
| Trooper Meeks: | Huh? |
| Ms. Cardona: | Yes. |
| Trooper Meeks: | You don't care. Hang out right here. Okay. Just step off right over here in the grass. |

Again, Trooper Meeks was certainly persistent, but he was not getting a clear and direct answer to his question. Ms. Cardona did initially say no, but when Trooper Meeks tried to clarify with "It's not okay?", Ms. Cardona started rambling about her medication. Based on a review of the video, Ms. Cardona's eventual consent was clear and voluntary. There was no coercion based on a review of the video and the totality of the circumstance. Furthermore, Ms. Cardona's initial "no" did not prevent Trooper Meeks from getting clarification. After Trooper Meeks got Ms. Cardona to focus on his question regarding the search, and not her medications, she consented to the search. She neither limited nor revoked her consent. Additionally, there was enough communication between both Defendants and Trooper Meeks to determine that they knew what they were being asked, and knowingly consented to the search.

4

## CONCLUSION

Based on the findings of fact and conclusions of law above, Defendant's Motion for Reconsideration is DENIED.

IT IS SO ORDERED this 8th day of September, 2020.


                                                      <u>Billy Roy Wilson</u>
                                                      UNITED STATES DISTRICT JUDGE